1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6    JOSE ALVAREZ-ABREGO,

7                               Petitioner,

8          v.

9    JEFF UTTECHT,

10                              Respondent.

No. C10-5543 RBL/KLS

**REPORT AND RECOMMENDATION**
**Noted for:  February 4, 2011**

11

12          This case has been referred to United States Magistrate Judge Karen L. Strombom

13   pursuant to Title 28 U.S.C. § 636 (b) (1) and Local MJR 3 and 4.    Petitioner Jose Alvarez-

14   Abrego filed a 28 U.S.C. § 2254 habeas corpus petition relating to his 2008 conviction of second

15   degree assault of a child.  ECF No. 7; ECF No. 20, Exh. 1.  Respondent filed a response and the

16   relevant state court record.  ECF Nos. 19 and 20.   Having carefully considered the parties'

17   filings and relevant record, the undersigned recommends that the petition be denied and this

18   action dismissed with prejudice.

19                                    **BACKGROUND**

20   **A.      Factual Background**

21          On June 10, 2008, Mr. Alvarez-Abrego was found guilty by jury verdict of one count of

22   second degree assault of a child.   ECF No. 20, Exh. 1.  He was sentenced on July 23, 2008 to 54

23   months confinement.[1]  *Id.*, Exh. 1 at 6.

24

25

26   _____

[1] An immigration detainer has been placed upon Mr. Alvarez-Abrego, which subjects him to possible removal from
the United States by the U.S. Department of Homeland Security following his release from the institution.  *See* ECF

REPORT AND RECOMMENDATION - 1

The Washington Court of Appeals summarized the facts underlying Mr. Alvarez-Abrego's conviction as follows:

> On August 29, 2007, at approximately 1:30 PM, Kristina Rondeau left her apartment in Centralia, Washington, with her 10 year old son, BEC, for a doctor's appointment.[2] Rondeau's boy friend, Alvarez-Abrego, periodically lived with her and often cared for the children while she was away.  That afternoon, Rondeau left her four other children, including her four year old daughter RRR and six month old son MJS, in Alvarez-Abrego's care. RRR was the oldest child remaining at the apartment.  No other adults were present and MJS was uninjured when Rondeau left.
>
> Between 6:00 and 6:30 PM, Rondeau returned home and saw MJS sleeping in his baby seat.  She told Alvarez-Abrego to accompany her to the store.  At that point, "[Alvarez-Abrego] grabbed [MJS] and put him in the stroller and went downstairs real fast" while she readied the other children.  Report of Proceedings (RP) (June 9, 2008) at 79-80.  Alvarez-Abrego pushed MJS in the stroller on their way to and from the store.  Rondeau thought that Alvarez-Abrego was acting unusually attached to MJS.
>
> When they returned to the apartment, Rondeau noticed that the side of MJS's head was swollen behind his left ear.  Rondeau immediately took MJS to a neighbor who drove them to the Centralia hospital.  Hospital staff determined to transfer MJS to Mary Bridge Children's Hospital in Tacoma.
>
> At Mary Bridge, Dr. Yolanda Duralde examined MJS twice over the period of several hours.  She determined that MJS had suffered a complex skull fracture behind his left ear and that he had significant bleeding under his scalp.  Duralde also diagnosed a healing fracture to MJS's rib and chip fractures to his wrist and ankles.  Rondeau told her that RRR said that Alvarez-Abrego had thrown MJS against the wall.
>
> While Rondeau and MJS were at the hospital, Centralia Police Officer Ruben Ramirez interviewed Alvarez-Abrego at the apartment.  Ramirez asked if Alvarez-Abrego knew what had happened to MJS.  Alvarez-Abrego responded that, earlier the previous day, while he was putting on shoes and socks in the bedroom, he heard MJS begin to cry.  When Alvarez-Abrego found MJS, he was on the carpet with his siblings, crying.  Alvarez-Abrego also told Ramirez that he took MJS and the other children to the store while Rondeau was away but that he did not see anything happen to MJS.

No. 20, Exh. 1(a).  His current earned release date from the Washington Department of Corrections is December 18, 2010, while his planned release date is December 8, 2010. *See* ECF No. 20, Exh. 1(b).

REPORT AND RECOMMENDATION - 2

Centralia Police Officer Carl Buster arrested Alvarez-Abrego.  When Buster asked Alvarez-Abrego if he had thrown MJS against the wall, Alvarez-Abrego paused and then in a soft voice denied throwing MJS.  Alvarez-Abrego suggested that one of the other children may have caused MJS's injuries.

The State charged Alvarez-Abrego with second degree child assault by either (1) "recklessly inflicting substantial bodily harm" or (2) "caus[ing] bodily harm that was greater than transient physical pain or minor temporary marks" after "having previously engaged in a pattern or practice of either assaulting the child which had resulted in bodily harm that was greater than transient pain or minor temporary marks, or causing the child physical pain or agony that was equivalent to that produced by torture."  Clerk's Papers at 92-93; *see* RCW 9A.36.130(1)(b).

[2] We refer to child victims and witnesses by their initials to protect their rights as minors under RCW 7.69A.030(4).  [Footnote by the Court.]

ECF No. 20, Exh. 7, pp. 2-3.

## B.    Procedural Background

Counsel for Mr. Alvarez-Abrego filed a notice of appeal of his superior court judgment and sentence to the Washington Court of Appeals, Division II.   ECF No. 20, Exh. 2.   Through counsel Mr. Alvarez-Abrego filed a brief of appellant in the Washington Court of Appeals.  *Id.*, Exh. 3.  Mr. Alvarez-Abrego filed a pro se statement of additional grounds for review.  *Id.*, Exh. 4.  Respondent State of Washington filed a brief in response.  *Id.*, Exh. 5.  The Washington Court of Appeals affirmed the judgment and sentence.   On October 12, 2009, Respondent State of Washington filed a statement of additional authorities.  *Id.*, Exh. 6.

Mr. Alvarez-Abrego filed a petition for review in the Washington Supreme Court.  *Id.*, Exh. 8.   On June 2, 2010, the Washington Supreme Court denied the petition for review.  *Id.*, Exh. 9.  The Washington Court of Appeals issued a mandate on July 26, 2010.  *Id.*, Exh. 10.

REPORT AND RECOMMENDATION - 3

## ISSUES FOR FEDERAL HABEAS REVIEW

Mr. Alvarez-Abrego presents three issues for federal habeas review:

1)   The trial court denied the defendant his right to due process under Washington Constitution, Article 1, § 3, and under United States Constitution, Fourteenth Amendment when it entered judgment against him for second [degree] assault of a child because this connection was not supported by substantial evidence.

2)   The trial court erred when it admitted third-party hearsay under ER 803(a)(4) "statement for purpose of medical diagnosis and treatment" exception because the statements admitted were not reliable and were not given for the purpose of diagnosis or treatment.

3)   The trial court violated the defendant's right to confrontation under Washington Constitution, Article 1 § 22, and United States Constitution, Sixth Amendment when it admitted testimonial statements of a non-witness to prove an element of the crime.

ECF No. 7, pp. 5, 7-8.

## EXHAUSTION

There is no dispute that Mr. Alvarez-Abrego's claims are exhausted.  ECF No. 18, p. 6.

## EVIDENTIARY HEARING

Evidentiary hearings are not usually necessary in a habeas case. According to 28 U.S.C. § 2254(e)(2) (1996), a hearing will only occur if a habeas applicant has failed to develop the factual basis for a claim in state court, and the applicant shows that: (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or if there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.  28 U.S.C. § 2254(e)(2) (1996).

REPORT AND RECOMMENDATION - 4

Petitioner's claims rely on established rules of constitutional law.  Further, there are no factual issues that could not have been previously discovered by due diligence.  Finally, the facts underlying Petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime.  Therefore, this court concludes that an evidentiary hearing is not necessary to decide this case.

## STANDARD OF REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.  *Engle v. Isaac,*  456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1983). Section 2254 explicitly states that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a) (1995).  The Supreme Court has stated many times that federal habeas corpus relief does not lie for mere errors of state law.  *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers,* 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  28 U.S.C. § 2254(d).  A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

REPORT AND RECOMMENDATION - 5

1

**DISCUSSION**

2

**A.    Claim One - Insufficient Evidence**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

In his first claim for federal habeas relief, Mr. Alvarez-Abrego asserts that there was insufficient evidence to find him guilty of second degree assault of a child.  ECF No. 7, p. 5. When evaluating a claim of insufficiency of the evidence to support a conviction, the question is not whether the court itself believes the evidence establishes guilt.  "Instead, the relevant question is whether . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis original).  The court must "view the record as a whole in the light most favorable to the prosecution."  *Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir.), cert. denied, 489 U.S. 1077 (1990).

The court's review is limited to "record evidence."  *Herrera v. Collins*, 113 S. Ct. 853, 861 (1993).  Review is sharply limited and the court owes great deference to the trier of fact. *Wright v. West*, 112 S. Ct. 2482, 2492, (1992).  A sufficiency of evidence review is undertaken with reference to the elements of the criminal offense as set forth by state law.  *Jackson*, 443 U.S. at 324 n. 16.   Mr. Alvarez-Abrego's conviction is now presumptively lawful and the burden is on him in this § 2254 proceeding to establish that (1) no rational trier of fact could have found the elements of the crime beyond a reasonable doubt, in accordance with the *Jackson v. Virginia* standard, and (2) that the Washington Court of Appeals' adjudication of his *Jackson* claim was either contrary to or an unreasonable application of *Jackson*, for purposes of § 2254(d).

Mr. Alvarez-Abrego was convicted of the crime of assault of a child in the second degree under RCW 9A.36.130(1)(a)(1)(b), as charged in the State's Amended Information.

REPORT AND RECOMMENDATION - 6

ECF No. 20, Exh. 1 at 1 and Exh. 11.  RCW 9A.36.130 defines assault of a child in the second

degree as follows:

> (1)   A person eighteen years of age or older is guilty of the crime of assault of a
> child in the second degree if the child is under the age of thirteen and the person:
>
>> (a)  Commits the crime of assault in the second degree, as defined in RCW
>> 9A.36.021, against a child; or
>
>> (b)  Intentionally assaults the child and causes bodily harm that is greater
>> than transient physical pain or minor temporary marks, and the person has
>> previously engaged in a pattern or practice either of (i) assaulting the child which
>> has resulted in bodily harm that is greater than transient pain or minor temporary
>> marks, or (ii) causing the child physical pain or agony that is equivalent to that
>> produced by torture.

RCW 9A.36.130.  Mr. Alvarez-Abrego was charged by the State under both alternatives to

RCW 9A.36.130.  ECF No. 20, Exh. 11.

Mr. Alvarez-Abrego does not state how or in what manner his conviction was not

supported by substantial evidence.  ECF No. 7, p. 5.  He has included no facts supporting his

claim that he was denied due process when the trial court "entered judgment against him for

second [degree] assault of a child because this conviction was not supported by substantial

evidence."  *Id.*   Because Mr. Alvarez-Abrego failed to state any facts in support of this habeas

claim, this claim may be summarily denied based on a failure to comply with Rule 2(c)(2) of

the Rules Governing § 2254 Cases, which requires that a habeas petitioner state the facts

supporting each ground for relief in the petition.  *See id.*

When he litigated this claim in the Washington Court of Appeals, Mr. Alvarez-Abrego

specifically alleged that his conviction was not supported by substantial evidence because not a

single witness claimed to know his age (where one of the elements of the crime of assault of a

REPORT AND RECOMMENDATION - 7

child in the second degree is that the defendant must be 18 years of age or older).  ECF No. 20, Exh. 3, pp. 10-16.

The trial court admitted Mr. Alvarez-Abrego's identification card, which had a birth date of April 12, 1971.  It was alleged that Mr. Alvarez-Abrego committed his crime of assault of a child in the second degree on August 29, 2007.  ECF No. 20, Exh. 11.  Therefore, the identification card indicated that Mr. Alvarez-Abrego was 36 years of age at the time of the assault.  ECF No. 13, Verbatim Report of Proceedings of June 9, 2008, pp. 108-109:

BY MR. HAYES:

Q      Handing you what's marked as state's Identification No. 3, can you take a look at that and tell me what it is?

A      This is a – what appears to be a – a letter from a records custodian from the Department of Licensing, certifying that this photo is a record of Jose Alvarez-Abrego, and it's a copy of his identification card, Washington identification card.

Q      What's the birthday on that –

MR. MEYER:          Objection; relevance.

THE COURT:          Overruled.

A      April 12th of 1971.

MR. HAYES:          Your Honor, State moves to admit Identification 3.

MR. MEYER:          Voir Dire?

THE COURT:          Go ahead.

MR. MEYER:          You have absolutely no idea as to the accuracy of that record, do you?

THE WITNESS:          Only what the records custodian is certifying here.

MR. MEYER:          But you don't know if it's true or not?  You don't know if the information contained on there is accurate?

REPORT AND RECOMMENDATION - 8

| | | |
|---|---|---|
| THE WITNESS: | On which part? |
| MR. MEYER: | On the picture part. |
| THE WITNESS: | No, I have no idea. |
| MR. MEYER: | Foundation. |
| THE COURT: | Overruled.  It's certified, is it not? |
| MR. HAYES: | It is. |
| THE COURT: | Is it sealed? |
| MR. HAYES: | Yes. |
| THE COURT: | It's admissible by statute. |
| MR. MEYER: | I agree. |
| THE COURT: | Identification 3 is admitted as Exhibit 3. |

ECF No. 13, pp. 108-109

At trial, the court instructed the jury as to the elements of the crime of assault of a child in the second degree, including the element that the defendant must be 18 years of age or older, and that the victim was under the age of 13.  ECF No. 20, Exh. 12.  In its opinion affirming Mr. Alvarez-Abrego's conviction, the Washington Court of Appeals held that the evidence was sufficient to establish the elements of the charged offense under Washington law:

## II.   SUFFICIENCY OF EVIDENCE

During Buster's direct examination, the trial court admitted Alvarez-Abrego's Washington identification card, including his picture and date of birth, over the defense's foundation objection.  Alvarez-Abrego contends that the State failed to prove one of the statutory elements of second degree child assault under RCW 9A.36.130(1) – that he was at least 18 years old.  Specifically, Alvarez-Abarego claims that the admission of a certified copy of a state identification card for a person named Jose Alvarez Abrego, born in 1971, was insufficient evidence

REPORT AND RECOMMENDATION - 9

of his age because no witnesses testified that the defendant was the same person shown on the card.  We disagree.

A.      Standard of Review

When reviewing a challenge to the sufficiency of the evidence, we determine whether any rational fact finder could have found the essential elements of the charged crime beyond a reasonable doubt, viewing the trial evidence in the light most favorable to the State.  *State v. Brockob,* 159 Wn.2d 311, 336, 150 P.3d 59 (2006).  An insufficiency claim also admits all inferences that a fact finder can reasonably draw from the evidence.  *State v. Salinas,* 119 Wn.2d 192, 201, 829 P.2d 1058 (1992).

B.      Sufficient Evidence of Second Degree Child Assault

In every criminal prosecution, the State must prove each element of the crime charged beyond a reasonable doubt.  *See In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, L. Ed. 2d 368 (1970).  We treat direct and circumstantial evidence as equally reliable and we defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence.  *State v. Delmarter,* 94 Wn.2d 634, 638, 618 P.2d 99 (1980); *State v. Walton,* 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

Here, the State presented sufficient evidence that the Jose Alvarez-Abrego whose birthday was April 12, 1971, was the same Jose Alvarez-Abrego on trial. During Buster's direct testimony, the State introduced Exhibit 3, a certified copy of a Washington State Identification Card, complete with color photograph.  After testifying about his interview with Alvarez-Abrego, Buster stated that the exhibit "appears to be a -- letter from a records custodian from the Department of Licensing, certifying that this photo is a record of Jose Alvarez-Abrego, and it's a copy of his identification card, Washington identification card."  Buster read the birth date listed on the card as "April 12th of 1971."  RP (June 9, 2008) at 108. The trial court overruled the defense's foundation objection, ruling that the certified record was admissible by statute.

The jury could compare this photograph to Alvarez-Abrego.  Based on this evidence, taken in the light most favorable to the State, it was sufficient to support the jury's verdict.  Thus, we hold that this evidence was sufficient to allow any rational juror to determine beyond a reasonable doubt that Alvarez-Abrego was at least 18 years old.[3]

---

[3] Alvarez-Abrego cites *State v. Hunter,* 29 Wn. App. 218, 627 P.2d 1339 (1981), to argue that the State needs additional evidence confirming that the card belonged to Alvarez-Abrego beyond Buster's tacit recognition that the picture matched the defendant.  But the *Hunter* court held instead that "[w]here a former

REPORT AND RECOMMENDATION - 10

> judgment is an element of the substantive crime being charged, identity of names
> alone is not sufficient proof of the identity of a person to warrant the court in
> submitting to the jury a prior judgment of conviction." 29 Wn. App. at 221.  We
> distinguish this case based on, among other things, the color photograph
> connecting the document to the defendant. [Footnote by the court.]

ECF No. 20, Exh. 7, p. 20.

As noted above, the relevant question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319. Viewing the record as a whole in the light most favorable to the prosecution, the undersigned finds that the Washington Court of Appeals' decision was not contrary to or an objectively unreasonable application of clearly established law.  There was admissible evidence in the form of a certified copy of a state identification card with a color photo of Jose Alvarez-Abrego.  The trial court found, and defense counsel agreed, that such evidence was admissible under Washington statute.[2]   It is also noteworthy that Mr. Alvarez-Abrego is not challenging the accuracy of the information contained in the identification card.  The Washington Court of Appeals concluded that a jury could compare the photograph with the Jose Alvarez-Abrego on trial.  This was not an objectively unreasonable determination of the facts in light of the evidence presented.

Mr. Alvarez-Abrego is not entitled to habeas relief on this claim.  The undersigned recommends that Mr. Alvarez-Abrego's first claim for habeas relief be denied and dismissed with prejudice.

---

[2] RCW 5.44.040 (certified copies of public records may be admissible as an exception to hearsay rule); *State of Washington v. [C.N.H.], B.D.,* 90 Wash. App. 947, 954 P.2d 1345 (1998)(certified copy of Washington state-issued identification card was admissible as evidence of defendant's age under hearsay exception for public records).  Although not applicable to state court proceedings, the federal rules of evidence similarly allow the admission of certified copies without extrinsic evidence of authenticity and regardless of the declarant's availability to testify. *See,* Fed. R. Evid. 902(4) and Fed. R. Evid. 803(8).

REPORT AND RECOMMENDATION - 11

**B.      Claims Two and Three – Admission of Third-Party Hearsay Under 803(a)(4)**

In his second claim for federal habeas relief, Mr. Alvarez-Abrego asserts that the trial court erred when it admitted third-party hearsay under ER 803(a)(4) "statement for purpose of medical diagnosis and treatment" exception because the statements admitted were not reliable and were not given for the purpose of diagnosis or treatment.  ECF No. 7, p. 7.  In his third claim for federal habeas relief, Mr. Alvarez-Abrego asserts that the trial court violated his Sixth Amendment right to confrontation when it admitted testimonial statements of a non-witness to prove an element of the crime.  ECF No. 7, p. 8.  Mr. Alvarez-Abrego presents no facts supporting these claims.   Thus, they can be summarily denied based on a failure to comply with Rule 2(c)(2) of the Rules Governing § 2254 Cases, which requires that a habeas petitioner state the facts supporting each ground for relief in the petition.  *See id.*

When he raised these issues in the Washington courts of appeal, Mr. Alvarez-Abrego complained that RRR's statement to Kristina Rondeau that Mr. Alvarez-Abrego had thrown six-month old MJS against the wall, was hearsay, it was erroneously admitted under ER 803(a)(4) because the statements were not made for purposes of medical diagnosis or treatment, and admission of the statement violated his Sixth Amendment right to confrontation.  ECF No. 20, Exhs. 3 and 8.

**1.      Inadmissible Hearsay**

Petitioner's second claim fails for two reasons.  First, the Washington Court of Appeals agreed with Mr. Alvarez-Abrego that ER 803(a)(4) did not permit double hearsay of an uninjured declarant and that the trial court had erred in admitting statements  as double hearsay from an uninjured declarant under ER 803(a)(4).  ECF No. 20, Exh. 7, pp. 12-16.   Second, federal habeas relief is not available for errors of state law only.  *See* 28 U.S.C. § 2254(a); see

REPORT AND RECOMMENDATION - 12

also *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) ("A federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of some provision of the United States Constitution."). Specifically, state evidentiary rulings are not cognizable in a federal habeas proceeding unless federal constitutional rights are affected. *McGuire*, 502 U.S. at 68; *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir.1990).

Thus, to the extent Petitioner argues that the hearsay testimony was admitted in violation of Washington's evidentiary rules, his claims do not present federal questions and are not cognizable on federal habeas review.

### 2.   Violation of Confrontation Clause

To the extent Petitioner is claiming that the admission of the hearsay testimony violated his Sixth Amendment right to confrontation, his claim fails because the Washington Court of Appeals reasonably determined that admission of the evidence was harmless.

The Washington Court of Appeals concluded that admission of RRR's statements violated the Confrontation Clause. ECF No. 20, pp. 8-11. The court then turned to the question of whether the admission of RRR's statements was nevertheless harmless:

> Here, aside from Duralde's constitutionally flawed hearsay testimony, the State has established overwhelming untainted evidence of Alvarez-Abrego's guilt. MJS was injury free when Rondeau left him in Alvarez-Abrego's care that afternoon. When Rondeau returned, Alvarez-Abrego concealed MJS from her by grabbing and keeping him in the stroller during their trip to the store. There is no evidence that Alvarez-Abrego told Rondeau that MJS fell while Alvarez-Abrego was putting on his shoes in the bedroom or that he discovered the injuries following that purported fall. Rondeau noted that Alvarez-Abrego was acting in an unusual manner toward MJS when she returned but she did not ask to see or

REPORT AND RECOMMENDATION - 13

hold MJS until they returned to the apartment from the store.  When she finally saw MJS, his head was grossly swollen, pushing his scalp away from his skull and changing the placement of his left ear.  Additionally, Rondeau's oldest child verified that Alvarez-Abrego would swing MJS around by his ankles when Rondeau was away.  And their neighbor heard MJS give a sickly, painful cry that quickly stopped, something she had never heard him do before.

The medical evidence supported this testimony and pointed singularly to an assault by an adult.  MJS suffered a complex fracture to his skull caused by a significant blunt force trauma.  There was evidence that prior child abuse had caused fractures to his wrist, ankles, and rib.  Duralde testified that MJS's injuries "were consistent with someone hurting him as opposed to having experienced accidental injury"; thus, disregarding her ultimate conclusion that "the history that fit[ ] his injury was that he had been thrown against the wall," the overwhelming evidence shows that, as sole caretaker during Rondeau's absence, Alvarez-Abrego caused the trauma to MJS. RP (June 9, 2008) at 40-41.

Alvarez-Abrego's theory was that either MJS fell and hit his head or that RRR caused the injury to her brother.  But Duralde cast significant doubt on both possibilities.  First, to fracture a child's skull to that degree would require a 10 or 20 foot drop, nearly impossible inside their apartment.  Second, that type of fracture occurs only "one percent of the time" from falls of the type that Alvarez-Abrego suggested occurred. RP (June 9, 2008) at 42.  Third, the oldest child at the apartment with Alvarez-Abrego, four year old RRR, was likely not strong enough to lift her brother and apply sufficient force to fracture his skull in that fashion.  And Rondeau testified that she had never seen RRR carry MJS.  Finally, the room where Alvarez-Abrego claims MJS fell was carpeted, further reducing the possibility of an accidental injury.  Therefore, we hold that any constitutional error was harmless.

Nonconstitutional error in admitting hearsay evidence requires reversal only if it is reasonably probable that the error materially affected the trial's outcome.  *State v. Neal*, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001).  Consistent with our holding that the constitutional error was harmless, we hold that admission of the hearsay statement in violation of ER 803(a)(4) was unlikely to have materially affected Alvarez-Abrego's conviction was, therefore, harmless.

*See* ECF No. 20, Exh. 7, pp. 17-18.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), the federal courts must defer to a state court's determination of harmless error "unless it was in conflict with the reasoning or the holdings of [United States

REPORT AND RECOMMENDATION - 14

Supreme Court] precedent or if it applied harmless-error review in an objectively unreasonable manner." *Inthavong v. Lamarque*, 420 F.3d 1055, 1058-59 (9th Cir.2005) (internal quotation marks omitted). If a federal court concludes under AEDPA that the state court's determination of harmless error was contrary to United States Supreme Court precedent or objectively unreasonable, then no deference is owed, and the federal court is to apply an independent harmless error analysis under *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). *Id.* at 1059. Therefore, "[t]o grant relief where a state court has determined that a constitutional error was harmless, [a federal court] must both determine (1) that the state court's decision was contrary to or an unreasonable application of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice under *Brecht* from the constitutional error." *Id.* Under *Brecht*, a constitutional error at trial will not warrant habeas relief unless the violation in question "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637-38. "Evidence erroneously admitted in violation of the Confrontation Clause must be shown harmless beyond a reasonable doubt, with courts considering the importance of the evidence, whether the evidence was cumulative, the presence of corroborating evidence, and the overall strength of the prosecution's case." *United States v. Bowman*, 215 F.3d 951, 961 (9th Cir.2000) (*citing Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). A violation of a defendant's confrontation rights is subject to harmless error analysis because its effect can be "quantitatively assessed in the context of other evidence presented" to the jury. *Winzer v. Hall*, 494 F.3d 1192, 1201 (9th Cir.2007) (*citing Arizona v. Fulminante*, 499 U.S. 279, 308, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).

Here, as the Washington Court of Appeals correctly noted, the non-hearsay evidence

REPORT AND RECOMMENDATION - 15

that Mr. Alvarez-Abrego assaulted the six-month old infant was overwhelming.  MJS was injury free when his mother, Ms. Rondeau, left him and her other children in the sole care of Mr. Alvarez-Abrego.  RRR, the oldest child at the apartment with Mr. Alvarez-Abrego was only four years old at the time.  ECF No. 20, Exh. 13, p. 78.  When Ms. Rondeau returned, Mr. Alvarez-Abrego concealed MJS from her by grabbing him and keeping him in the stroller.  Ms. Rondeau also noticed that Mr. Alvarez-Abrego was acting in an unusual manner toward MSJ.  *Id.*, pp. 78-80.  When Ms. Rondeau finally saw MJS, his head was grossly swollen, pushing his scalp away from his skull and changing the placement of his left ear.  *Id.*, pp. 81-81.  Ms. Rondeau's oldest child verified that Mr. Alvarez-Abrego would swing MJS around by his ankles when Ms. Rondeau was not there.  *Id.*, pp. 92-93.  A neighbor heard MJS give a sickly, painful cry that quickly stopped.  *Id.*, pp. 63-64.  The medical evidence indicated prior child abuse and non-accidental injury.  The medical evidence also refuted Mr. Alvarez-Abrego's theory that MJS fell and hit his head or that RRR caused the injury to her brother.  The evidence indicated that to fracture a child's skull to the degree of injury suffered by MJS would require a 10 to 20 foot drop, which was nearly impossible inside their apartment, that type of fracture occurs only one percent of the time from the type of fall Mr. Alvarez-Abrego was suggesting, that the room where MJS fell was carpeted further reducing the possibility of an accidental injury, and that the four year old RRR was likely not strong enough to lift her brother and apply sufficient force to fracture his skull in a manner consistent with his injuries.    ECF No. 20, Exh. 13, pp. 40-44.

    The Washington Court of Appeals concluded that even disregarding the doctor's ultimate conclusion that "the history that fit[] his injury was that he had been thrown against the wall," the overwhelming evidence shows, that as sole caretaker during Rondeau's absence, Alvarez-Abrego caused the trauma to MJS."  ECF No. 20, pp. 17-18 (*citing* RP (June 9, 2008) at 40-41.

REPORT AND RECOMMENDATION - 16

The Washington Court of Appeal's determination that the trial court's Confrontation Clause error was harmless was not in conflict with United States Supreme Court precedent or objectively unreasonable.  The undersigned finds no prejudice under *Brecht*.  The non-hearsay evidence against Mr. Alvarez-Abrego was overwhelming and pointed to his guilt.  His attempts at trial to conjecture that MSJ's injuries were caused by a fall or by the four year old RRR were unpersuasive and contradicted by medical evidence.   Accordingly, the undersigned finds that the state court's determination of these issues was not contrary to or an unreasonable application of clearly established federal law.  Mr. Alvarez-Abrego's second and third claims should be denied and dismissed with prejudice.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge.  A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Under this standard and based on a thorough review of the record and analysis of the law in this case, this court concludes that Mr. Alvarez-Abrego is not entitled to a certificate of appealability with respect to this petition.

REPORT AND RECOMMENDATION - 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CONCUSION**

Based on the foregoing discussion, the undersigned recommends that Mr. Alvarez-Abrego's habeas petition be **denied**, and this action **dismissed with prejudice**.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **February 4, 2011**, as noted in the caption.

DATED this _18th_ day of January, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18